UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSIO MOLAND, ET AL., | 1:16-cv-01073-LJO-SKO |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER GRANTING DEEFENDANT'S MOTION TO DISMISS (Doc. 4) |
| v. | |
| CITY OF CERES ET AL., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Rosio Moland, Shon Moland, and Mya Moland file this action against Defendants Thomas Miller ("Miller") and the City of Ceres ("City"). Rosio Moland sues on her own behalf, as Guardian ad Litem for Shon Moland and Mya Moland, and as administrix of the Jason Moland Estate. This action arises out of the fatal shooting of Jason Moland, Plaintiff Rosio Moland's husband, by Miller, a police officer employed by the City of Ceres.

Plaintiffs bring a federal claim pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging violations of the Fourth and Fourteenth Amendments, and various state law claims. Now before the Court is Defendant City's Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). This matter is suitable for disposition without oral argument. *See* Local Rule 230(g).

## II. BACKGROUND

**A.     Factual Allegations**

Plaintiff Rosio Moland is the mother of Plaintiffs Shon Moland and Mya Moland. (Complaint ("Compl.") ¶ 2, ECF No. 1.) During the relevant period, she was married to decedent Jason Moland.

1

(*Id.*) Rosio Moland and her children are the successors in interest to decedent Jason Moland. (*Id.*) During the relevant period, Defendant Miller was a police officer employed by the Ceres Police Department, a political subdivision of Defendant City. (*Id.* ¶¶ 1, 3.)

According to the Complaint, Miller contacted Rosio Moland, a former friend, and "used his position as a police officer to counsel and influence [her] relationship with her husband and attempted to persuade [her] into initiating an affair with [Miller]." (*Id.* ¶ 6.) Miller and Rosio Moland met at Byer Park in Modesto on March 29, 2015. (*Id.* ¶ 7.) Miller and Rosio Moland went to a nearby Starbucks and then the two returned to Byer Park. (*Id.*)

While Rosio Moland and Miller were conversing in the park, Jason Moland approached Miller carrying a BB gun. (*Id.* ¶ 8.) Miller drew his service weapon and shot Jason Moland in the chest. (*Id.*) Jason Moland died later that night, or very early the next day. (*Id.*)

The Complaint alleges that Miller took "intentional and unconstitutional actions" pursuant to the "customs, policies, practices, and/or procedures of the Ceres Police Department, which were directed, encouraged, allowed, and/or ratified by policy making officers" for the City. (*Id.* ¶ 18.)

**B.      Procedural Background**

Plaintiffs filed the original complaint on May 6, 2016 in Stanislaus County Superior Court. On July 25, 2016, Defendant City filed a Notice of Removal pursuant to 28 U.S.C. § 1441 and the case was removed to this Court. (ECF No. 1.) Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 with respect to Plaintiffs' federal law claims, and this Court may exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this Court.

The Complaint sets forth the following causes of action: (1) violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 as to Defendants Miller and Does 1-10 (first cause of action) and as to City, Police, and Does 11-100 (second cause of action); (2) negligence pursuant to California Government Code §§ 820 and 815.2 (third cause of action); (3) negligent infliction of emotional distress (fourth cause of action); (4) intentional infliction of emotional distress

1  (fifth cause of action); (5) survival action on behalf of the Estate of Jason Moland pursuant to California
2  Code of Civil Procedure § 377.30 (sixth cause of action); and (6) wrongful death pursuant to California
3  Code of Civil Procedure § 377.60 (seventh cause of action). Plaintiffs seek damages of not less than
4  $25,000.
5   On September 8, 2016, Defendant City filed a motion to dismiss each of the six causes of action
6  alleged against them in the Complaint, namely causes of action two through seven. (ECF Nos. 4, 5.)
7  Plaintiffs opposed the motion. (ECF No. 8.) Defendant City submitted a reply. (ECF No. 9.) The matter
8  is now ripe for review.

### III. STANDARD OF DECISION

10   A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the
11  sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.
12  2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the
13  absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police
14  Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which
15  relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading
16  in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's
17  favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).
18   Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that
19  the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and
20  the grounds upon which it rests." A plaintiff is required to allege "enough facts to state a claim to relief
21  that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial
22  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
23  inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
24  (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a
25  sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

3

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim. "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### IV. DISCUSSION

**A.   Violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983**

To state a claim under § 1983, plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).

### 1. Color of Law Analysis[1]

The Supreme Court has interpreted the phrase "under 'color' of law" to mean "under 'pretense' of law." *Screws v. United States*, 325 U.S. 91, 111 (1945). "[A]cts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties." *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 n.10 (7th Cir. 1990) (internal citations omitted).

The color of law analysis has three components. First, the act constituting the deprivation of constitutional rights must have been "performed while the officer [was] acting, purporting, or pretending to act in the performance of his or her official duties." *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000). Second, "the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others." *Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006) (citing *Van Ort v. Estate of Sandwich*, 92 F.3d 831, 839-40 (9th Cir. 1996)). Third, the challenged conduct must be "related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Martinez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995). In determining whether a police officer was acting under color of law, courts assess a variety of factors, such as whether the officer was on duty, in uniform, using police-issued equipment, and whether the individual represented that he was a law enforcement officer, among others. *See Huffman v. City of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998). The thrust of the inquiry, however, is whether the officer was cloaked in authority while performing the challenged conduct. *Pete v. Olsen*, No. CV-09-54-EFS, 2010 WL 996408, at *3 (E.D. Wash. Mar. 15, 2010).

By contrast, an officer who is "'pursuing his own goals and [i]s not in any way subject to control by [his public employer],'" *Van Ort*, 92 F.3d at 838 (internal quotation marks and citations omitted),

---

[1] The City does not raise this issue directly in its motion, but the Court may address sua sponte whether a § 1983 claim is brought under color of state law. *Diaz v. Laborde*, 872 F.2d 427 (9th Cir. 1989); *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995)

1  does not act under color of law, unless he "purport[s] or pretend[s]" to do so, *id.* Officers who engage in
2  confrontations for personal reasons unrelated to law enforcement, and do not "purport[ ] or pretend" to
3  be officers during the confrontation, do not act under color of law. *Id.*; *see also Parrilla-Burgos v.*
4  *Hernandez-Rivera*, 108 F.3d 445, 449-51 (1st Cir. 1997) (peace officer was not acting under pretense of
5  authority when he shot plaintiff following barroom dispute); *Barna v. City of Perth Amboy*, 42 F.3d 809,
6  815-18 (3d Cir. 1994) (police officer who assaulted family member was not acting under color of law
7  despite use of service revolver and police-issued nightstick); *Pitchell v. Callan*, 13 F.3d 545, 547-48 (2d
8  Cir. 1994) (off-duty police officer acted "as a private citizen, not as a state actor" when he used his
9  personal weapon to shoot a guest in his home). In *Huffman*, an off-duty sheriff's deputy shot and killed
10 decedent during a bar fight. 147 F.3d at 1056. At the time of the incident, the officer was off-duty, plain-
11 clothed, and did not identify himself as an officer. *Id.* at 1058. Although he used ammunition from the
12 sheriff's department, he used his own weapon. *Id.* Under these circumstances, the court concluded that
13 the officer's actions were not "related to the performance of his official duties." *Id.* (internal quotation
14 marks and citations omitted).
15      Here, Plaintiffs have not alleged sufficient facts to infer that Miller was acting under color of law
16 during the shooting incident that caused the alleged constitutional violations. According to the
17 Complaint, Miller was "acting as an officer" when he first initiated contact with Rosio Moland and he
18 "used his position as a police officer to counsel and influence [Rosio Moland's] relationship with her
19 husband." (Compl. ¶ 6.) These allegations, however, are not relevant to the incident that resulted in the
20 alleged constitutional deprivation – i.e. Miller fatally shooting Jason Moland. Plaintiffs also allege, in
21 conclusory fashion, that Miller was acting "under color of state law" when the constitutional violations
22 occurred. (*Id.* ¶ 11.) This "threadbare recital" of the elements of the cause of action is not sufficient to
23 state a claim. *Iqbal*, 129 S.Ct. at 1949.
24      The only fact offered in support of Plaintiffs' allegation that Miller was acting under color of law
25
26

when he shot Jason Moland is that Miller used his service revolver. (Compl. ¶ 8.)[2] This fact, standing alone, is insufficient to show that Miller was acting under color of law. That a police officer used his or her service weapon, without more, does not indicate that the officer was acting under color of law. *Barna,* 42 F.3d at 818-19 ("To hold otherwise would create a federal cause of action out of any unauthorized use of a police-issue[d] weapon, without regard to whether there are any additional circumstances to indicate that the officer was exercising actual or purported police authority."); *see also Hechavarria v. City & Cty. of San Francisco*, No. C 10-0525 CRB, 2010 WL 3743651, at *3 (N.D. Cal. Sept. 17, 2010), *aff'd,* 463 F. App'x 632 (9th Cir. 2011) (city employee who allegedly used state-issued pepper spray in assaulting plaintiff during altercation about an extra-marital affair between plaintiff and defendant's wife was not acting under color of law). Even where department policy requires the officer to carry his service weapon at all times, use of a service weapon is insufficient to indicate that a police officer was acting under color of law. *See Bonsignore v. City of New York*, 683 F.2d 635 (2d Cir. 1982) (holding that an officer who shot his wife and then committed suicide with his police handgun did not act under color of law even though the officer was required to carry the police gun at all times).

The Complaint does not allege that Miller was on-duty or dressed in uniform on the evening of the alleged incident. (Compl. ¶ 6-8.) Furthermore, the Complaint does not allege that Jason Moland knew that Miller was a police officer when he approached him carrying a BB gun, nor that Miller identified himself as such to Jason Moland. (*Id. ¶* 8.) *See Pete*, 2010 WL 996408, at *3 (defendant who never identified himself as a police officer during altercation related to theft of his private vehicle was not acting under color of law). The Complaint does not allege that Miller used his position as a police

---

[2] The Complaint does not allege that Miller was required or encouraged to carry service revolvers at all times. That allegation is contained only in Plaintiffs' Opposition brief. (ECF No. 8 at 2.) As such, the Court will disregard this allegation. *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998)) ("The 'new' allegations contained in the . . . opposition motion, however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") However, the Court notes that the inclusion of this fact would not impact the Court's color of law analysis. Relevant case law makes clear that a policy requiring officers to carry a service weapon at all times is insufficient to render actions of a personal or private nature actions under color of law. *See Bonsignore v. City of New York*, 683 F.2d 635, 639 (2d Cir. 1982).

7

officer to exert authority over Jason Moland during the incident. *Van Ort*, 92 F.3d at 839-40 (police officer who robbed citizens after knocking on their door did not act under color of law because victim did not open door for defendant based on his status as a police officer). On the contrary, the circumstances alleged in the Complaint suggest that Miller was acting in his personal capacity when the alleged incidents transpired. According to the Complaint, Miller was engaged in conduct of a personal nature with Rosio Moland. (Compl. ¶¶ 1, 6-8); *see also Sinks v. Cty. of Fresno*, No. CV-F-11-1990-LJO-SKO, 2012 WL 174969, at *5 (E.D. Cal. Jan. 20, 2012) (police officer involved in an altercation with restaurant staff while eating lunch with his wife was acting "in the ambit of his personal pursuits," not under color of law (internal quotation marks and citations omitted)).

The second cause of action is therefore DISMISSED with leave to amend for failure to allege the underlying conduct complained of was committed by a person acting under color of state law. For the same reason, the first cause of action under § 1983 against individual defendants also fails to state a claim upon which relief can be granted. Therefore, the first cause of action is also sua sponte DISMISSED with leave to amend. *See Campos v. Rojas*, No. C 04-2353 SBA(PR), 2005 WL 1785181, at *2 (N.D. Cal. July 25, 2005) (dismissing § 1983 action against non-moving defendant where allegations against all defendants involved purely private conduct and thus failed to state a claim).

**2.    Municipal (*Monell*) Liability.**

A municipality cannot be held liable under § 1983 for the actions of its employees under the theory of *respondeat superior. See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To state a claim against a public entity under *Monell*, a plaintiff must plead "(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (2011) (internal quotation marks and citations omitted). The policy must be the result of a decision of a person employed by the entity who has final decision or policy making authority. *Monell*, 436 U.S. at

694.

The City moves to dismiss on the ground that the Complaint fails to allege adequately a *Monell* claim. (ECF No. 5 at 3-5.) The Complaint alleges four customs or policies: (1) using or tolerating the use of excessive force; (2) using or tolerating the use of unlawful deadly force; (3) covering up violations of constitutional rights by failing to investigate complaints of excessive force, ignoring or failing to properly investigate unconstitutional police activity, and using or tolerating improper procedures for investigating police misconduct; and (4) failing to implement procedural safeguards to prevent constitutional violations stemming from the use of excessive force, with notice that omitting these procedural safeguards was likely to result in constitutional violations. (Compl. ¶ 18.) The Complaint further alleges that the City failed to "properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Miller" with deliberate indifference to Rosio Moland and Jason Moland's constitutional rights. (*Id.* ¶ 19.) It is further alleged that the City knew or "it should have been obvious to them" that the inadequate training program was likely to result in constitutional violations because of "a pattern of similar violations." (*Id.*) These allegations are entirely conclusory. They are supported by no facts that would tend to plausibly suggest the City had any unconstitutional custom or policy, failed to train or supervise, or knew or should have known of a pattern or practice of similar violations. A conclusory allegation regarding the existence of a policy or custom unsupported by factual allegations is insufficient to state a *Monell* claim. For example, in *Via v. City of Fairfield*, 833 F. Supp. 2d 1189, 1196 (E.D. Cal. 2011), plaintiff alleged that:

> [T]he acts ... alleged in the Complaint ... are indicative and representative of a repeated course of conduct by members of the CITY OF FAIRFIELD Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens ... [T]he damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training, supervision and/or discipline of members of the ... FAIRFIELD Police Department.

The district court granted defendants' motion to dismiss plaintiff's *Monell* claim based on its

9

determination that the above allegation was conclusory and lacked factual content regarding the City's alleged policy. *Id.*; *see also Save CCSF Coal v. Lim*, No. 14-CV-05286-SI, 2015 WL 3409260, at *13 (N.D. Cal. May 27, 2015) (unspecific allegation regarding municipal defendant's use of force policy insufficient to identify a relevant policy or custom under *Monell*); *Telles v. City of Waterford*, No. 1:10–cv–00982, 2010 WL 5314360, at *4 (E.D. Cal. Dec. 20, 2010) (to sufficiently state a claim under *Monell*, plaintiff must allege facts establishing a policy, it is not enough simply to state that there is a policy); *Jenkins v. Humboldt County*, No. C 09–5899, 2010 WL 1267113, at *3 (N.D. Cal. Mar. 29, 2010) (same); *Smith v. Stanislaus*, No. 1:11-CV-01655-LJO, 2012 WL 253241, at *3-4 (E.D. Cal. Jan. 26, 2012) (same). The allegations in the Complaint are as conclusory as those in *Via* and the other cases cited.

Defendant City's Motion to Dismiss the second cause of action for failure to allege a *Monell* claim is therefore GRANTED with leave to amend.

**B.     Causes of Action under State Law**

Defendant City removed this action to this Court from Stanislaus County Superior Court because the complaint contained claims brought under a federal statute, 42 U.S.C. § 1983, for violations of the United States Constitution. (ECF No. 1.) Where all federal claims are dismissed in an action containing both federal and state law claims, a federal court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *Notrica v. Bd. of Supervisors of Cty. of San Diego*, 925 F.2d 1211, 1213-14 (9th Cir. 1991). As discussed above, this Court dismisses the first and second causes of action, the only federal claims in this lawsuit. Accordingly, this Court DECLINES to exercise supplemental jurisdiction over the third through seventh causes of action alleged against Defendant City and will not address them at this time.

### V. CONCLUSION AND ORDER

For the reasons stated above:

   1)     Defendant City's Motion to Dismiss the second cause of action for violation of civil rights

pursuant to 42 U.S.C. § 1983 (ECF No. 4) is GRANTED WITH LEAVE TO AMEND.

2) Plaintiffs' first cause of action for violation of civil rights pursuant to 42 U.S.C. § 1983 as to Defendant Miller is sua sponte DISMISSED WITH LEAVE TO AMEND.

3) The Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' state law claims.

Plaintiffs shall have twenty (20) days from electronic service of this Order to file an amended complaint or give notice that she will stand on the current pleading.

IT IS SO ORDERED.

Dated:   **October 17, 2016**          /s/ Lawrence J. O'Neill
                                       UNITED STATES CHIEF DISTRICT JUDGE

11