# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROSIO MOLAND, ET AL.,** | **1:16-cv-01073-LJO-SKO** |
| **Plaintiffs,** | **MEMORANDUM DECISION AND ORDER GRANTING DEEFENDANTS' MOTIONS TO DISMISS** |
| **v.** | |
| **CITY OF CERES ET AL.,** | **(ECF Nos. 18, 19, 20.)** |
| **Defendants.** | |

## I. INTRODUCTION

Plaintiffs Rosio Moland, Shon Moland, and Mya Moland file this action against Defendants Thomas Miller ("Miller") and the City of Ceres ("City"). Rosio Moland sues on her own behalf, as Guardian ad Litem for Shon and Mya Moland, and as administrix of the Jason Moland Estate. This action arises out of the fatal shooting of Jason Moland, Plaintiff Rosio Moland's husband, by Miller, a police officer employed by the City of Ceres.

Plaintiffs bring a federal claim pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging violations of the Fourth and Fourteenth Amendments, and various state law claims. Now before the Court is Defendant City's Motion to Dismiss the first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6). This matter is suitable for disposition without oral argument. *See* Local Rule 230(g).

## II. BACKGROUND

### A. Procedural Background

Plaintiffs filed the original complaint ("OC") on May 6, 2016 in Stanislaus County Superior Court. On July 25, 2016, Defendant City filed a Notice of Removal pursuant to 28 U.S.C. § 1441 and

1

the case was removed to this Court. (ECF No. 1.) Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 with respect to Plaintiffs' federal law claims, and this Court may exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this Court.

The FAC sets forth the same seven causes of action: (1) violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 as to Defendants Miller and Does 1-10 (first cause of action) and as to City, Police, and Does 11-100 (second cause of action); (2) negligence pursuant to California Government Code §§ 820 and 815.2 (third cause of action); (3) negligent infliction of emotional distress (fourth cause of action); (4) intentional infliction of emotional distress (fifth cause of action); (5) survival action on behalf of the Estate of Jason Moland pursuant to California Code of Civil Procedure § 377.30 (sixth cause of action); and (6) wrongful death pursuant to California Code of Civil Procedure § 377.60 (seventh cause of action). Plaintiffs seek damages of not less than $25,000.

On October 18, 2016, the Court dismissed the OC against Defendant City on the grounds that Plaintiffs did not adequately plead that Defendant Miller was acting under color of law when he shot Jason Moland and, alternatively, that Plaintiffs did not plead a *Monell* claim against Defendant City. (Order, ECF No. 12.) The Court granted Plaintiffs leave to amend the complaint. On November 7, 2016, Plaintiffs filed the first amended complaint ("FAC"). Defendants City and Miller moved to dismiss all causes of action stated against them. (ECF Nos. 19, 20.) Plaintiffs filed late oppositions to both motions. (ECF Nos. 27, 28.)[1] Defendants each submitted a reply. (ECF Nos. 35, 36.) The matter is now ripe for review.

**B.**    **Factual Allegations**

The factual allegations contained in the FAC are largely the same as those contained in the OC and recited in this Court's October 18 Order. (Order at 1-2.) The FAC contains one paragraph that

---

[1] Plaintiffs filed their oppositions six days late. This Court granted Plaintiffs an extension of time to file pursuant to Federal Rule of Civil Procedure 6(b). (ECF No. 33.) As the Court previously indicated, any future ignoring of the Rules will not be so easily forgiven.

1 expands upon the factual allegations in the OC:

2
> Plaintiff is informed and believes and thereon alleges, that as Jason Moland approached MILLER identified himself as a police officer of the City of Ceres and in accordance with that department policies fired at Jason Moland with the intent to kill him. Once the fatal shot or shots were fired MILLER took control of the scene using his position as a police officer to direct plaintiff and control the incident scene until other police officers from another agency arrived. Once other officers arrived MILLER continued to identify himself as a Ceres police officer with authority over the scene while plaintiff was separated from the subsequent health care of Jason Moland and the investigation. MILLER's actions from the point of identifying Jason Moland as a threat before shooting him, was in compliance with the City of Ceres police department procedures asserting authority of law over Jason Moland and plaintiff from that point until the inception of the investigation by the Modesto Police. MILLER'S actions during this time frame was in compliance with the standard Ceres Police procedures to assert the authority of the Ceres Police department when an individual officer is off duty in order to protect the officer and the public from injury or harm. MILLER's actions leading up to the shooting put him in the position of danger, and his actions in compliance with standard Ceres Police department policies identified above, which were subsequently ratified by the Ceres Police department, of acting as an officer and using deadly force while identifying himself as an officer and acting as such violated plaintiff and Jason Moland's constitutional rights.

(FAC ¶ 9.)

## III. <u>STANDARD OF DECISION</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and

1   the grounds upon which it rests." A plaintiff is required to allege "enough facts to state a claim to relief

2   that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

3   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

5   (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

6   sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

7       While Rule 8(a) does not require detailed factual allegations, "it demands more than an

8   unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is

9   insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a

10  cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

11  elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it

12  is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants

13  have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal.,*

14  *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must

15  contain either direct or inferential allegations respecting all the material elements necessary to sustain

16  recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must

17  describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

18  "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by

19  amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the

20  pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to

21  amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.

22  1990) (citations omitted).

23                          **IV. <u>DISCUSSION</u>**

24  **A.      <u>Defendant Miller's Motion to Dismiss</u>**

25       Plaintiffs argue that Miller is precluded from moving to dismiss the FAC because Miller did not

26                                      4

1   move to dismiss the OC. (ECF No. 27 at 3.) According to Plaintiffs, by failing to oppose the FAC and

2   by filing answers in state and federal court, Miller waived his right to contest the FAC for failure to state

3   a claim. (*Id.*) Defendant Miller counters that Plaintiffs' waiver argument is not supported by case law

4   and that the argument is made in bad faith because he was not served with the complaint until after the

5   case was removed to federal court, and was not notified of the removal by Plaintiffs. (ECF No. 36 at 2-

6   3.)

7        As a general rule, when a plaintiff files an amended complaint, the amended complaint

8   supersedes the original, the latter being treated thereafter as non-existent. *Pac. Bell Tel. Co. v. Linkline

9   Communications, Inc*., 555 U.S. 438, 456 n.4 (2009) (citing 6 C Wright and A. Miller, Federal Practice

10  & Procedure § 1476, pp. 556-57 (2d ed. 1990)). After the filing of the amended complaint, prior

11  complaints no longer perform any function in the case. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.

12  1992). Indeed, courts regularly deny as moot motions to dismiss an original complaint after an amended

13  complaint has been filed. *See, e.g.*, *Wensel v. Subia*, No. CIV S-07-0900JAMEFBP, 2009 WL 251132,

14  at *1 (E.D. Cal. Feb. 3, 2009)

15       Because the FAC supersedes the OC in its entirety, Defendant did not waive his right to move to

16  dismiss the FAC by failing to move to dismiss the OC. *Lowry v. Metro. Transit Bd. MTBS*, No.

17  09CV882BTM WVG, 2010 WL 1571216, at *1 (S.D. Cal. Apr. 16, 2010) (considering defendant's

18  motion to dismiss the amended complaint on the merits although defendant did not move to dismiss the

19  original complaint); *McCloud v. Pierce Cty. Sheriff Dep't*, No. 316CV05098BHSDWC, 2016 WL

20  3675904, at *6 (W.D. Wash. June 6, 2016), *report and recommendation adopted*, No. C16-5098 BHS-

21  DWC, 2016 WL 3618082 (W.D. Wash. July 6, 2016) ("While [defendant] did not move to dismiss the

22  claims alleged against him, if [plaintiff] files an amended complaint it will act as a complete substitute to

23  the original Complaint and therefore [plaintiff] must include all claims against [defendant] in the

24

25

26

5

1   amended complaint."). Miller is entitled to have his motion considered on the merits.[2]

2   **B.    Violation of the Fourth and Fourteenth Amendments under 42 U .S.C. § 1983**

3       To state a claim under § 1983, plaintiff must allege that: (1) the conduct complained of was

4   committed by a person acting under color of state law; and (2) that the conduct deprived plaintiff of

5   rights, privileges or immunities secured by the Constitution or laws of the United States. *Jensen v. City*

6   *of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).

7       **1.    Color of Law Analysis**

8       The Supreme Court has interpreted the phrase "under 'color' of law" to mean "under 'pretense'

9   of law." *Screws v. United States*, 325 U.S. 91, 111 (1945). "[A]cts committed by a police officer even

10  while on duty and in uniform are not under color of state law unless they are in some way related to the

11  performance of police duties." *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 n.10 (7th Cir. 1990)

12  (internal citations omitted).

13      The color of law analysis has three components. First, the act constituting the deprivation of

14  constitutional rights must have been "performed while the officer [was] acting, purporting, or pretending

15  to act in the performance of his or her official duties." *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir.

16  2000). Second, "the officer's pretense of acting in the performance of his duties must have had the

17  purpose and effect of influencing the behavior of others." *Anderson v. Warner*, 451 F.3d 1063, 1068-69

18  (9th Cir. 2006) (citing *Van Ort v. Estate of Sandwich*, 92 F.3d 831, 839-40 (9th Cir. 1996)). Third, the

19  challenged conduct must be "related in some meaningful way either to the officer's governmental status

20  or to the performance of his duties." *Martinez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995).

21      In its October 18 Order, the Court dismissed Plaintiffs' § 1983 claim against Defendants City

22

23  [2] Because it is clear that Miller did not waive his right to file a motion to dismiss, the Court need not address Miller's

24  argument that Plaintiffs' waiver argument was made in bad faith. However, the Court notes that the Proof of Service does indicate that Miller was not served with the complaint until September 12, 2016, almost two months after the case was removed to federal court and after the City of Ceres filed their motion to dismiss the OC in federal court. (ECF No. 36-1, Ex.

25  A.) The September Proof of Service indicates that the case was filed in the Superior Court of California, County of Stanislaus, and does not indicate that the case was removed to federal court. (*Id.*)

26

1    and Miller on the grounds that Plaintiffs did not adequately plead that Miller was acting under color of

2    law at the time that he committed the alleged constitutional violation. The Court reasoned:

3            In determining whether a police officer was acting under color of law, courts
        assess a variety of factors, such as whether the officer was on duty, in uniform, using
4        police-issued equipment, and whether the individual represented that he was a law
        enforcement officer, among others. *See Huffman v. City of Los Angeles*, 147 F.3d 1054,
5        1058 (9th Cir. 1998). The thrust of the inquiry, however, is whether the officer was
        cloaked in authority while performing the challenged conduct. *Pete v. Olsen*, No. CV-09-
6        54-EFS, 2010 WL 996408, at *3 (E.D. Wash. Mar. 15, 2010).
            By contrast, an officer who is "'pursuing his own goals and [i]s not in any way
7        subject to control by [his public employer],'" *Van Ort*, 92 F.3d at 838 (internal quotation
        marks and citations omitted), does not act under color of law, unless he "purport[s] or
8        pretend[s]" to do so, *id.* Officers who engage in confrontations for personal reasons
        unrelated to law enforcement, and do not "purport[ ] or pretend" to be officers during the
9        confrontation, do not act under color of law. *Id.*; *see also Parrilla-Burgos v. Hernandez-
        Rivera*, 108 F.3d 445, 449-51 (1st Cir. 1997) (peace officer was not acting under pretense
10       of authority when he shot plaintiff following barroom dispute); *Barna v. City of Perth
        Amboy*, 42 F.3d 809, 815-18 (3d Cir. 1994) (police officer who assaulted family member
11       was not acting under color of law despite use of service revolver and police-issued
        nightstick); *Pitchell v. Callan*, 13 F.3d 545, 547-48 (2d Cir. 1994) (off-duty police officer
12       acted "as a private citizen, not as a state actor" when he used his personal weapon to
        shoot a guest in his home).
13           . . .
            The Complaint does not allege that Miller was on-duty or dressed in uniform on
14       the evening of the alleged incident. (Compl. ¶ 6-8.) Furthermore, the Complaint does not
        allege that Jason Moland knew that Miller was a police officer when he approached him
15       carrying a BB gun, nor that Miller identified himself as such to Jason Moland. (*Id.* ¶ 8.)
        *See Pete*, 2010 WL 996408, at *3 (defendant who never identified himself as a police
16       officer during altercation related to theft of his private vehicle was not acting under color
        of law). The Complaint does not allege that Miller used his position as a police officer to
17       exert authority over Jason Moland during the incident. *Van Ort*, 92 F.3d at 839-40 (police
        officer who robbed citizens after knocking on their door did not act under color of law
18       because victim did not open door for defendant based on his status as a police officer).
        On the contrary, the circumstances alleged in the Complaint suggest that Miller was
19       acting in his personal capacity when the alleged incidents transpired. According to the
        Complaint, Miller was engaged in conduct of a personal nature with Rosio Moland.
20       (Compl. ¶¶ 1, 6-8); *see also Sinks v. Cty. of Fresno*, No. CV-F-11-1990-LJO-SKO, 2012
        WL 174969, at *5 (E.D. Cal. Jan. 20, 2012) (police officer involved in an altercation with
21       restaurant staff while eating lunch with his wife was acting "in the ambit of his personal
        pursuits," not under color of law (internal quotation marks and citations omitted)).

22   (Order at 5-8.)

23       In their amended pleading, Plaintiffs add allegations that prior to the shooting incident, "as Jason

24   Moland approached MILLER identified himself as a police officer of the City of Ceres and in

25

26                                                     7

1   accordance with that department [sic] policies fired at Jason Moland with the intent to kill him." (FAC

2   ¶ 9.) Plaintiffs also allege that Miller took certain actions after the shooting to control the scene and that

3   he repeatedly identified himself as a police officer to responding law enforcement officers.

4          As the court explained in its October 18 Order, in determining whether a defendant was acting

5   under color of law, the court weighs and balances a number of factors, including "whether the officer

6   was on duty, in uniform, using police-issued equipment, and whether the individual represented that he

7   was a law enforcement officer, among others." (Order at 5.) The context in which the events took place

8   is important to weighing the factors. *Hudson v. Maxey*, 856 F. Supp. 1223, 1228 (E.D. Mich. 1994) ("the

9   focus of analysis must be the nature of the defendant officer's actions an*d the factual context out of*

10  *which those actions arose*" (emphasis added)); *Beck v. City of Portland, Or.*, No. CV-10-434-HU, 2010

11  WL 4638892, at *7 (D. Or. Nov. 5, 2010)) ("actions . . . made in the context of what appears to have

12  been a personal dispute . . . does not cloak [defendant's] actions with official authority"). However, the

13  central inquiry remains whether the officer was, or was purporting to be, "cloaked in authority while

14  performing the challenged conduct" or whether he was instead acting "in the ambit of his personal

15  pursuits." (Order at 5, 8); *see also Huffman v. City of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998);

16  *Pete v. Olsen*, No. CV-09-54-EFS, 2010 WL 996408, at *3 (E.D. Wash. Mar. 15, 2010); *Hudson v.*

17  *Maxey*, 856 F. Supp. 1223, 1228-29 (E.D. Mich. 1994).

18         As an initial matter, Defendant Miller's activity in securing and controlling the scene after the

19  shooting took place does not render the shooting an act committed under color of law. *See Corder v.*

20  *Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 899 F.2d 14 (6th Cir. 1990) (acts taken after shooting

21  incident were not relevant to analysis of whether officer was acting under color of law where officer was

22  clearly acting in a personal capacity prior to the altercation). In *Myers v. Bowman*, a magistrate judge

23  called the police to report the theft of his daughter's dog by the plaintiff, leading to the plaintiff's arrest.

24  713 F.3d 1319, 1324-25 (11th Cir. 2013). After the arrest, the judge made threatening remarks to the

25  plaintiff. *Id.* The plaintiff brought suit under § 1983, alleging that the judge and others had conspired to

26
                                                      8

1    have him falsely arrested. *Id.* at 1331. The Court held that the judge's threats after the arrest did not

2    create a reasonable inference that he acted under color of law when he reported the crime. *Id.* Rather, the

3    facts indicated that he was acting in his personal capacity when the events leading up to the alleged

4    constitutional deprivation occurred. *Id.* Likewise, Miller's actions here in controlling the scene after the

5    shooting do not indicate that he was acting under color of law when the shooting occurred.

6           The relevant fact added to the FAC for the purpose of establishing that Miller acted under color

7    of law was that he identified himself as a police officer before he shot Jason Moland. This fact, coupled

8    with the allegation that Miller used his service weapon in the shooting, are the only facts offered by

9    Plaintiffs to establish that Miller acted under color of law. However, these facts do not indicate that

10   Miller was "cloaked in authority" or that he used his authority over Jason Moland in depriving him of

11   his constitutional rights. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839-40 (9th Cir. 1996)

12   (holding that a police officer who committed armed robbery did not act under color of law because he

13   "did not use his authority to gain entry to the home or to induce [victim] to open his front door" and did

14   not "exert[] . . . meaningful, physical control over [the victim] on the basis of his status as a law

15   enforcement officer.")

16          Plaintiffs' allegation that Miller identified himself as a police officer is also not sufficient to

17   allege that he acted under color of law. *Id.* ("Merely because a police officer is recognized as an

18   individual employed as a police officer does not alone transform private acts into acts under color of

19   state law."); *Cook v. Morrow,* No. C06–04337, 2007 WL 3022607, *6–7 (N .D. Cal. Oct. 12,

20   2007) (officer's single comment that he was from the Oakland Police Department was not enough to

21   show that the officer was "acting, purporting, or pretending to act in the performance of his official

22   duties"). In *Sinks v. County of Fresno*, the court held that a police officer who allegedly assaulted

23   restaurant staff while having lunch with his wife was not acting under color of law even though he

24   repeatedly identified himself as a police officer. 2012 WL 174969, at *5. Applying *Van Ort*, the court

25   held that the defendant, who was unquestionably engaged in personal pursuits at the time of the incident,

26                                                          9

1   "exerted no meaningful, physical control over [the victim] on the basis of his status as a law

2   enforcement officer." *Id.* The court noted that in spite of the fact that the defendant identified himself as

3   a police officer, the restaurant staff still asked him to leave the premises, called 911 to summon the

4   Fresno County Sherriff's Department, and attempted to make a citizen's arrest. These facts suggested

5   that even if the defendant was "purporting to act in the performance of his official duties, his behavior

6   did not influence the behavior of others." *Id.* (citing *Van* Ort, 92 F.3d at 839-40).

7          The facts pled by Plaintiffs suggest that Miller was off-duty, not in uniform, and engaged in

8   conversation of a personal and romantic nature with Rosio Moland at the time of the alleged incident.

9   (FAC ¶¶ 6-8.) Unlike *Sinks*, where the facts pled affirmatively suggested that the police officer did not

10  exercise control or authority, the facts pled here are silent on whether Miller's self-identification as a

11  police officer had the effect of exercising control and authority over Jason Moland. Plaintiffs have not

12  pled facts to suggest that Miller exercised meaningful control or authority over Jason Moland in the

13  events leading up to or during the incident, nor that Jason Moland interpreted Miller's actions as being

14  taken under color of law or by a police officer. *See Sinks*, 2012 WL 174969, at *5. The Court therefore

15  DISMISSES the first and second cause of action for failure to allege the underlying conduct complained

16  of was committed by a person acting under color of state law. The Court GRANTS Plaintiffs one

17  additional and final opportunity to amend their complaint to allege that Defendant Miller acted under

18  color of law.

19          **2.      Municipal (*Monell*) Liability.**

20          A municipality cannot be held liable under § 1983 for the actions of its employees under the

21  theory of *respondeat superior. See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To state a

22  claim against a public entity under *Monell*, a plaintiff must plead "(1) that the plaintiff possessed a

23  constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy

24  amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the

25  moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900

26                                                          10

1    (2011) (internal quotation marks and citations omitted). The policy must be the result of a decision of a

2    person employed by the entity who has final decision or policy making authority. *Monell*, 436 U.S. at

3    694.

4          Defendant City moves to dismiss on the ground that the FAC still fails to allege adequately a

5    *Monell* claim. (ECF No. 5 at 3-5.) In the October 18 Order, the Court explained that Plaintiffs failed to

6    plead a *Monnell* violation:

7          The FAC alleges four customs or policies: (1) using or tolerating the use of
           excessive force; (2) using or tolerating the use of unlawful deadly force; (3) covering up
8          violations of constitutional rights by failing to investigate complaints of excessive force,
           ignoring or failing to properly investigate unconstitutional police activity, and using or
9          tolerating improper procedures for investigating police misconduct; and (4) failing to
           implement procedural safeguards to prevent constitutional violations stemming from the
10         use of excessive force, with notice that omitting these procedural safeguards was likely to
           result in constitutional violations. (Compl. ¶ 18.) The Complaint further alleges that the
11         City failed to "properly hire, train, instruct, monitor, supervise, evaluate, investigate, and
           discipline Miller" with deliberate indifference to Rosio Moland and Jason Moland's
12         constitutional rights. (*Id.* ¶ 19.) It is further alleged that the City knew or "it should have
           been obvious to them" that the inadequate training program was likely to result in
13         constitutional violations because of "a pattern of similar violations." (*Id.*) These
           allegations are entirely conclusory. They are supported by no facts that would tend to
14         plausibly suggest the City had any unconstitutional custom or policy, failed to train or
           supervise, or knew or should have known of a pattern or practice of similar violations. A
15         conclusory allegation regarding the existence of a policy or custom unsupported by
           factual allegations is insufficient to state a *Monell* claim. For example, in *Via v. City of
16         Fairfield*, 833 F. Supp. 2d 1189, 1196 (E.D. Cal. 2011), plaintiff alleged that:
                [T]he acts ... alleged in the Complaint ... are indicative and representative
17              of a repeated course of conduct by members of the CITY OF FAIRFIELD
                Police Department tantamount to a custom, policy or repeated practice of
18              condoning and tacitly encouraging the abuse of police authority, and
                disregard for the constitutional rights of citizens ... [T]he damages
19              sustained as alleged herein were the direct and proximate result of
                municipal customs and/or policies of deliberate indifference in the
20              training, supervision and/or discipline of members of the ... FAIRFIELD
                Police Department.
21         The district court granted defendants' motion to dismiss plaintiff's *Monell* claim based on
           its determination that the above allegation was conclusory and lacked factual content
22         regarding the City's alleged policy. *Id.*; *see also Save CCSF Coal v. Lim*, No. 14-CV-
           05286-SI, 2015 WL 3409260, at *13 (N.D. Cal. May 27, 2015) (unspecific allegation
23         regarding municipal defendant's use of force policy insufficient to identify a relevant
           policy or custom under *Monell*); *Telles v. City of Waterford*, No. 1:10–cv–00982, 2010
24         WL 5314360, at *4 (E.D. Cal. Dec. 20, 2010) (to sufficiently state a claim under *Monell*,
           plaintiff must allege facts establishing a policy, it is not enough simply to state that there
25         is a policy); *Jenkins v. Humboldt County*, No. C 09–5899, 2010 WL 1267113, at *3 (N.D.

26                                                      11

1  Cal. Mar. 29, 2010) (same); *Smith v. Stanislaus*, No. 1:11-CV-01655-LJO, 2012 WL

2  253241, at *3-4 (E.D. Cal. Jan. 26, 2012) (same). The allegations in the Complaint are as

   conclusory as those in *Via* and the other cases cited.

3  (Order at 9-10.)

4  Plaintiffs have not included any additional facts in the FAC regarding Defendant City's policies,

5  customs, or practices that would remedy this deficiency. Instead, they cite to a portion of the FAC that

6  was not altered from the OC (FAC ¶20), and dispute the Court's dismissal of the OC, noting that "this is

7  simply the pleading stage of the litigation." (ECF No. 28 at 3 (citing *Klebanow v. Funston*, 35 F.R.D.

8  518 (S.D.N.Y. 1964).) However, as Plaintiffs acknowledge in their brief, the Supreme Court's more

9  recent decisions in *Twombly* and *Iqbal* require plaintiffs to plead more than conclusory and threadbare

10  allegations. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported

11  by mere conclusory statements, do not suffice.") Plaintiffs have again failed to do so here. The FAC

12  does not plausibly suggest the City had any unconstitutional custom or policy, failed to train or

13  supervise, or knew or should have known of a pattern or practice of similar violations. Defendant City's

14  motion to dismiss the second cause of action for failure to allege a *Monell* claim is therefore GRANTED

15  with leave to amend.

16  **C.**    **Causes of Action under State Law**

17  Defendant City removed this action to this Court from Stanislaus County Superior Court because

18  the complaint contained claims brought under a federal statute, 42 U.S.C. § 1983, for violations of the

19  United States Constitution. (ECF No. 1.) Where all federal claims are dismissed in an action containing

20  both federal and state law claims, a federal court may decline to exercise supplemental jurisdiction over

21  the remaining state law claims. 28 U.S.C. § 1367(c)(3); *Notrica v. Bd. of Supervisors of Cty. of San*

22  *Diego*, 925 F.2d 1211, 1213-14 (9th Cir. 1991). As discussed above, this Court dismisses the first and

23  second causes of action, the only federal claims in this lawsuit. Accordingly, this Court DECLINES to

24  exercise supplemental jurisdiction over the third through seventh causes of action alleged against

25  Defendant City and will not address them at this time.

26

## V. <u>CONCLUSION AND ORDER</u>

For the reasons stated above:

1)  Defendants' motions to dismiss the FAC causes of action brought pursuant to 42 U.S.C.

    § 1983 (ECF Nos. 18, 19, 20) are GRANTED WITH LEAVE TO AMEND.

2)  The Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' state law claims.

    Plaintiffs shall have twenty (20) days from electronic service of this Order to file an amended

complaint or give notice that she will stand on the current pleading.

IT IS SO ORDERED.

Dated:  __**January 18, 2017**__                    _____**/s/ Lawrence J. O'Neill**_____
                                                        UNITED STATES CHIEF DISTRICT JUDGE

13